MAXWELL, J.,
for the Court:
¶ 1. Mississippi has a statutory preference for private ambulance services over public ones. And a county cannot contract with a public service if there is an adequate private service operating in the county. Here, Stone County Hospital (Hospital) created a private ambulance service, Stone County Ambulance Service (SCAS), in order to be awarded Stone County’s 2008 annual ambulance-service contract. But after a dispute arose between SCAS and the Stone County Board of Supervisors (Board) over which air ambulance service SCAS had to give priority, SCAS terminated its contractual services with the County in February 2008, giving thirty-days’ notice. Believing the County would have no ambulance service at the end of the thirty days, the Board entered an ambulance-service contract with AAA, the publicly run ambulance service that previously had the Stone County contract.
¶ 2. SCAS filed a bill of exceptions to the Board’s decision to enter a contract with AAA, claiming the contract violated Mississippi’s statutory preference for private ambulance service. The circuit court, sitting as an appellate court, agreed with SCAS and set aside the 2008 contract with AAA. The County appealed.
¶ 3. Finding the Board’s determination that there was no adequate private ambulance service in Stone County after SCAS quit providing service was not arbitrary or capricious, but rather was within the County’s lawful discretion, we reverse the judgment of the circuit court and render judgment to reinstate the AAA contract.
FACTS
¶ 4. For years, the Board had contracted with AAA, a public ambulance service of Forest County Hospital, to provide ambulance service to the County. In November 2007, AAA advised the Board the costs of its services would have to increase. In an effort to save money, the Board asked for bids from other services. The Hospital, *510 which is a private hospital in the County that had not previously offered an ambulance service, purchased two ambulances and was awarded the County’s contract. The Hospital called the newly created service “Stone County Ambulance Service.” SCAS was not a separate incorporated entity but rather an extension of the Hospital.
¶ 5. In January 2008, the Board accepted SCAS’s bid. AAA and another private company, AMR, submitted competing bids. SCAS immediately began providing ambulance service without a formal contract. But air ambulance service to the County quickly became an issue. The County was a paying member of an air-ambulance-service district, run by Rescue 7, a public service related to AAA. As a policy, the Hospital would first call a company other than Rescue 7 to provide air service. The Board insisted that SCAS call Rescue 7 first, making this a requirement in the written contract offered to SCAS in February 2008. SCAS refused to execute the written contract with the Rescue 7 provision, claiming the requirement violated the doctors’ discretion in selecting patient services.
¶ 6. At a February 2008 Board meeting, negotiations broke down. On February 19, SCAS’s president publicly announced SCAS had no other choice but to cease operations. SCAS followed up this threatened action with an official letter, terminating SCAS’s contractual services at the end of thirty days. Believing it had less than a month to ensure its citizens had an ambulance service, the Board entered a contract with AAA on February 26 and agreed to pay the higher rate demanded in November 2007.
PROCEDURAL HISTORY
¶ 7. Within ten days of the Board’s decision to contract with AAA, SCAS appealed the Board’s decision by filing a bill of exceptions. See Miss.Code Ann. § 11—51—75 (Rev.2002) (providing statutory procedure for appealing a board of supervisors’ decision to the circuit court). Initially, the Board refused to sign the bill of exceptions and have its clerk transfer it to the circuit clerk, as it believed only the Hospital, but not “Stone County Ambulance Service,” could appeal. The circuit court compelled the Board to sign and transfer the bill of exceptions, allowing the Board to submit its own amendments to the appellate record.
¶ 8. Sitting as the appellate court, the circuit court set aside the AAA contract, determining the Board violated the statutory preference for private ambulance services stated in Mississippi Code Annotated section 41-55-7 (Rev.2009). In reaching this conclusion, the circuit court relied on the Mississippi Supreme Court’s application of that statute in Cook v. Board of Supervisors of Lowndes County, 571 So.2d 932 (Miss.1990).
¶ 9. On appeal, the County argues: (1) the circuit court should have dismissed the appeal because “Stone County Ambulance Services,” not “Stone County Hospital, Inc.,” filed the bill of exceptions; and (2) the circuit court erred by setting aside the AAA contract, based on its determination there were two adequately run private services operating in the County.
DISCUSSION
I. The Bill of Exceptions
¶ 10. Section 11-51-75 confers the right to appeal to the circuit court on “[a]ny person aggrieved by a judgment or decision of the board of supervisors!.]” Miss.Code Ann. § 11-51-75. The County argues the wrong “person” filed the bill of exceptions. SCAS is not a separate incorporated entity. Instead, it is a trade name *511 for Stone County Hospital, Inc. By filing the bill of exceptions as “Stone County Ambulance Service,” the County claims “the proper legal entity of Stone County Hospital, Inc. has not been named as the Appellee ... or otherwise, perfected this appeal.”
¶ 11. The County relies on the following principle from Collins v. General Electric Co., 239 Miss. 825, 833, 123 So.2d 609, 613 (1960) (citation omitted), to argue the circuit court should have dismissed SCAS’s appeal:
In every action there must be a real plaintiff who is a person in law and is possessed of a legal entity or existence as a natural, artificial, or quasi-artificial person, and a suit brought in the name of that which is not a legal entity is a mere nullity.
But in Collins, the supreme court did not apply the general principle because it was apparent the named plaintiff was the trade name of a Mississippi corporation. Id. The supreme court instead relied on a second principle that:
an individual who is doing business in a trade-name may maintain an action in such trade-name, especially where the suit relates to the business conducted in that name, provided the trade-name is not made a cover or means of fraud, and provided a judgment in the action would be binding on the real party suing in such business or trade-name.
Id. at 833-34, 123 So.2d at 613 (citation omitted).
¶ 12. Reliance on Collins leads to the opposite result than the County asks for. Collins actually supports the Hospital’s use of its ambulance-service trade name to appeal the County’s decision related to ambulance service-the business the Hospital conducted as SCAS.
¶ 13. We are not persuaded by the County’s effort to distinguish Collins factually by arguing the exception does not apply to a brand-new trade name. The County’s own actions contradict its claim SCAS was not an established trade name. The contract the County asked SCAS to sign, made part of the Board’s February 19, 2008, minutes, stated the contract was between the County and “Stone County Hospital, Inc., a Mississippi Corporation, doing business as Stone County Ambulance Service.” (Emphasis added).
¶ 14. We agree with the circuit court’s finding that there was no confusion the Hospital, an incorporated entity, was filing a bill of exceptions. Using “Stone County Ambulance Service” in the caption was not fatal to its appeal. The County’s argument relies on form over substance. And like the circuit court, we too address the substance of this appeal.
II. Mississippi’s Statutory Preference for Private Ambulance Service
A. Standard of Review
¶ 15. Appellate review of a county board’s decision is limited. Stone County Pub., Inc. v. Prout, 18 So.3d 300, 302 (¶ 5) (Miss.Ct.App.2009) (citing Gannett River States Publ’g Corp. v. Jackson Advocate, 856 So.2d 247, 249 (¶ 10) (Miss.2003)). “A decision or order of a [county] will be upheld unless the order was not supported by substantial evidence, was arbitrary or capricious, was beyond the [county’s] scope or power, or was in violation of the aggrieved party’s constitutional or statutory rights.” Id. “[S]o long as the governing body’s decision is ‘fairly debatable,’ appellate courts are without authority to supplant the [county’s] legislative action.” Id. (quoting Gannett River, 856 So.2d at 249 (¶8)). “A rebuttable presumption exists in favor of the [county], *512 and the challenging party has the burden of proving otherwise.” City of Gulfport v. McHugh, 38 So.3d 674, 676 (¶ 7) (Miss.Ct.App.2010).
¶ 16. The circuit court gathered from the bill of exceptions that “there are at least two (2) privately run ambulance services [SCAS and AMR] which are adequate,” making it a violation of section 41-55-7 to contract with a public entity like AAA. It further found section 41-55-7 “is explicit in permitting a subsidy only for a privately run ambulance service.”
¶ 17. The existence of an adequate privately run ambulance service is a question of fact. Cook, 571 So.2d at 935-36. The circuit court, sitting as the appellate court, could only reverse the Board’s decision — that there would be no ambulance service when SCAS quit — if it was arbitrary, capricious, or without substantial credible evidence. Id. at 936. Under the circumstances, the record does not support a finding that the Board acted arbitrarily or capriciously or in violation of section 41-55-7.
B. Governing Law
¶ 18. “State law enacts that private enterprise be preferred in the provision of county ambulance service.” Cook, 571 So.2d at 933. Mississippi Code Annotated section 41-55-7 directs:
If there is in operation an adequate privately run ambulance service, then the governing authorities are hereby prohibited from contracting for ambulance services to be run by the public body. The governing authorities may, however, subsidize such existing privately run ambulance service, in their discretion, if they deem necessary to keep such service in operation.
¶ 19. In Cook, the Lowndes County Board of Supervisors decided not to renew its contract with Cook Ambulance, Inc., a private ambulance service, instead contracting with a public service. 571 So.2d at 933. Lowndes County justified its action because the public service promised to offer additional services, namely paramedic support, that Cook Ambulance had not been offering. Id. at 934. The failure to offer paramedic services, Lowndes County argued, made Cook Ambulance “inadequate,” relieving Lowndes County from the prohibition of section 41-55-7. Id. at 935. The supreme court disagreed, finding that at the time Lowndes County contracted with the public company, there was no proof in the record that the public company would provide superior services. Id. at 936. Relying on the record, the supreme court found both the private and public company offered “adequate services.” Therefore, Lowndes County’s offering the contract to the public service was arbitrary and capricious. Id.
C. Cook’s Application
¶ 20. SCAS argues Cook disposes of this case, drawing a parallel between the auxiliary paramedic service in Cook and the requirement that SCAS call Rescue 7. But the glaring distinction in Cook is that Cook Ambulance, the private ambulance service, did not threaten to quit ambulance services. Lowndes County terminated the contract and entered a contract with a public company without any evidence Cook Ambulance would stop providing adequate services.
¶ 21. In contrast, the Hospital formed SCAS to provide services under the County’s contract. It had not been operating an ambulance service before January 2008. So when SCAS told the Board it was “ceasing contracted ambulance services,” the Board was reasonable to think that SCAS was ceasing its entire ambulance operation. SCAS’s termination letter is substantial credible evidence supporting *513 the Board’s factual conclusion that adequate ambulance services from SCAS no longer existed.
¶ 22. Further, the record does not support the circuit court’s conclusion AMR’s services existed in Stone County in March 2008. But see Cook, 571 So.2d at 936 (Lack of evidence that two other private services that bid on Lowndes County contract would be unable to provide service further supported setting aside contract for public services.). Like the record in Cook, the record here does indicate AMR initially bid on the County’s subsidy contract in January 2008. But this initial bid merely shows that AMR was willing in January 2008 to provide services if the County paid it a subsidy. It does not prove AMR was providing adequate ambulance service to the citizens of Stone County in March 2008, when the Board had to find a replacement service.
¶ 28. When SCAS sent its termination letter, the Board only had thirty days to ensure its citizens had an ambulance service. We find that entering a new contract with the public company that had provided services before was not an arbitrary decision and, under the circumstances, did not violate section 41-55-7. The record supports that SCAS said it was quitting its services, and the Board took the ambulance service at its word.
D. The Air-Ambulance Issue
¶24. Section 41-55-7 states that the Board “may” provide a subsidy contract. Because the contract is within the Board’s discretion, so are the terms. Thus, the Board properly exercised its discretion to require that SCAS call Rescue 7 first if it wanted the subsidy contract. This is different than what Lowndes County did in Cook. There, the county claimed Cook Ambulance was “inadequate” because it failed to provide an auxiliary paramedic service. Here, the Board did not find SCAS’s services were “inadequate” because it refused to call Rescue 7. Instead, it found SCAS’s services were nonexistent because SCAS terminated them based on the Rescue 7 requirement.
¶25. SCAS claims the air ambulance issue is dispositive, relying on Cook, but cannot get around the important distinguishing fact that it was the one that can-celled the contract. Section 41-55-7 did not entitle SCAS to the subsidy contract. Instead, it encouraged the County to provide it a subsidy by prohibiting the Board from entering a contract with AAA if SCAS was providing an adequate private service. There is nothing in the record to support that SCAS intended to continue operating services within the County after terminating the contract. Therefore, it failed to prove the Board had violated section 41-55-7 by contracting with AAA after it quit its services.
¶26. The circuit court also found the Board could not give AAA a subsidy under section 41-55-7, which is correct. The Board’s authority to provide AAA a subsidy contract instead comes from section 41-55-1:
The board of supervisors of any county ..., in their discretion and upon finding that adequate public ambulance service would not otherwise be available, may ... contract and otherwise cooperate with any department or agency of the United States government or the state of Mississippi, or any county, city, town, or supervisors district of the same, or other counties of the state of Mississippi in carrying out any of the powers herein conferred or otherwise effectuating the purposes of sections 41-55-1 to 41-55-11....
Miss.Code Ann. § 41-55-1 (Rev.2009) (emphasis added). The Board entered into the contract with AAA in March 2008 be *514 cause it determined the County would otherwise not have any ambulance service.
¶ 27. Finding the Board’s action did not violate sections 41-55-1 or 41-55-7, we reverse the circuit court’s judgment and render judgment to reinstate the Board’s contract with AAA.
CONCLUSION
¶ 28. Under our limited standard of review, we find support for the Board’s decision to contract with AAA and hold that, under these unique circumstances, the decision was not arbitrary and capricious and did not violate Mississippi statutory law.
¶ 29. THE JUDGMENT OF THE STONE COUNTY CIRCUIT COURT IS REVERSED AND RENDERED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEE.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, GRIFFIS, BARNES, ISHEE AND ROBERTS, JJ., CONCUR. CARLTON, J., CONCURS IN RESULT ONLY.